lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL H. GREEN, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ROGER WERHOLTZ, et al., )<br>)<br>    Defendants. )<br>_____) | Case No. 08-3260-JAR<br>Lead Case No. 06-3198 |
| DAVID G. DELIMONT, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>ROGER WERHOLTZ, et al., )<br>)<br>    Defendants. )<br>_____) | Case No. 08-3261-JAR<br>Lead Case No. 06-3198 |

## MEMORANDUM AND ORDER

*Pro se* plaintiffs Michael H. Green and David G. Delimont bring this lawsuit against Kansas Highway Patrol Trooper Gregg Peters alleging violation of their constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiffs allege that defendant Aramark Correctional Services, LLC ("Aramark") violated and continue to violate their First Amendment rights to exercise their religious beliefs, by failing to provide a kosher diet in the correctional facility where they are housed. This matter is before the Court on Aramark's Motion for Summary Judgment (Doc. 143). Plaintiffs have not filed a response and the time to do so has expired.[1] As explained more

---

[1] *See* D. Kan. Rule 6.1(d)(2) (requiring a response to a dispositive motion to be filed within 21 days). The Court granted Delimont a 30-day extension of time to respond. To date, neither plaintiff has filed a response.

fully below, defendant's motion is granted.

I.     **Procedural Background**

Plaintiffs Green, Delimont and Jimmy J. Searles jointly filed this action against state officials[2] and Aramark. Because Green and Delimont failed to pay their separate filing fees in accordance with the Prison Litigation Reform Act ("PLRA"), the Court severed Green and Delimont from the original action.[3] Later, in June 2009, when plaintiffs paid the proper filing fees, the Court entered an order that consolidated these cases, treating *Searles v. Werholtz* as the lead case.[4] During the time that the cases were severed, defendant Aramark filed a motion for summary judgment against defendant Searles, which the Court granted on September 2, 2009.[5] Green and Delimont did not file separate Complaints, but continued to rely on the allegations as originally filed. Since rejoining the case, Green and Delimont have not filed any motions or sought to amend the Complaint.

II.    **Summary Judgment Standard**

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . . shall constitute a waiver of the right thereafter to file such brief or response. . . ."[6] Furthermore, if a "respondent fails to file a response within the time required . . . the motion will be considered

---

[2]The Court granted State Defendants' Motion to Dismiss on December 31, 2008 (Doc. 88). Individual employees of Aramark were also named in the lawsuit, but have yet to be served, and will be addressed in a separate order.

[3](Doc. 55.) *Michael H. Green v. Roger Werholtz, et. al.* was filed as Case No. 08-3260; and *David G. Delimont v. Roger Werholtz, et al.* was filed as Case No. 08-3261.

[4](Doc. 103.)

[5](Doc. 104.)

[6]D. Kan. Rule 7.4.

and decided as an uncontested motion and ordinarily will be granted without further notice."[7] Nevertheless, "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[8] This will be the case where the movant fails to make out a prima facie case for summary judgment.[9] It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[10] In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[11]

Summary judgment is appropriate if the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."[12] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[13] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[14] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[15]

The moving party bears the initial burden of providing the court with the basis for the

---

[7]*Id.*

[8]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985))). The Court notes, however, that failing to file a timely response to a motion for summary judgment still waives the right to thereafter respond or otherwise controvert the facts alleged in the motion. D. Kan. R. 7.4.

[9]*Id.* (citations omitted).

[10]*Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[11]*Id.*

[12]Fed. R. Civ. P. 56(c).

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[14]*Id.*

[15]*Id.* at 251–52.

3

motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[16] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[17] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[18] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[19] When examining the underlying facts of the case, the court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[20]

Because plaintiffs are *pro se* litigants, the court must construe their pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[21] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[22] The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[23] Additionally, a

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[17] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[18] *Id.*

[19] *Id.*

[20] *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[21] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[22] *Id.*

[23] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

*pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[24]

### III. Uncontroverted Facts

All material facts set forth by defendant are deemed admitted for the purpose of summary judgment, as plaintiff failed to specifically controvert them as required under D. Kan. R. 56.1(a).[25]

*Plaintiffs' Complaint*

Green is an inmate currently housed at the Hutchinson Correctional Facilty ("HCF"). Delimont is an inmate currently housed at the Lansing Correctional Facility ("LCF"). At all times relevant to this action, Green and Delimont were incarcerated at LCF. Aramark is a private independent contractor of the KDOC.

Green filed one grievance on June 1, 2005, in which he complains that, in his view, the food being served to him was not kosher because it was not being prepared by a "jew"; specifically, that he was served non-Jewish milk "because the milk was allegedly not milked in the presence of a Jew, that all food served to him was not kosher because 'one may not eat food cooked by NonJew' [sic], and that the eggs served to him were not kosher because they were not 'soaked, salted and rinsed as if they were meat.'" After investigating Green's grievance allegations, the Kansas Department of Corrections ("KDOC") determined that no further action

---

[24]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[25]That rule provides: "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. Rule 56.1(a).

5

was necessary, stating that the current kosher diet menus have been approved by the KDOC, Aramark and Rabbinical Authority (Rabbi Ben Friedman), and are in compliance with current guidelines.

Delimont filed one grievance on August 14, 2005, in which he alleged that Aramark or Aramark employees did not care about the health of the inmates or the kosher diet. Delimont's specific allegations of non-kosher food service include service of bagels for Passover, service of non-kosher jelly for Passover, service of allegedly non-kosher soy meat tacos, service of dairy with beef at the noon meal on July 22, 2005, service of outdated and tainted foods from April through August 1, 2005, and service of dressing containing bacon on June 30, 2005. The KDOC conducted an investigation and found Delimont's grievance to be without merit, and that no further action was necessary.

*Plaintiffs' Admissions through Discovery*

There is a separate area in the kitchen for kosher food preparation at LCF. There are separate kosher utensils that are used for the preparation of kosher meals at LCF. The separate kosher utensils are labeled dairy and non-dairy. The kosher menu served, the kosher recipes used, the kosher utensils used, and the area for preparation of the kosher food at LCF are approved by a rabbinical authority. The kosher menu is generated and prepared with the approval of a qualified dietician and approved by the KDOC. The kosher menu provides more than 2900 calories plus adequate levels of protein, vitamins and minerals. From April 2005 to April 2006, the food on the kosher menu was served on single-use, disposable paper plates and bowls.

On at least one occasion since April 2005 to present, plaintiffs ate a non-kosher

6

hamburger. Plaintiffs are not Aramark employees and have never worked in the kitchen while incarcerated at LCF. Plaintiffs have never attended a meeting between Aramark and its employees at LCF, and have no knowledge of what is discussed between Aramark supervisors and employees during meetings at which they were not present. Plaintiffs have no personal knowledge of how kosher meals are in fact prepared.

### *Affidavit of Rabbi Friedman*

Rabbi Ben Friedman is the rabbinical authority for the KDOC. Rabbi Friedman attests that: there is a separate area in the kitchen for kosher food preparation at LCF; separate utensils are stored in the kosher food preparation area; kosher utensils are cleaned separately from all other utensils used in the kitchen and are the only utensils used to prepare kosher meals at LCF; and the kosher utensils are labeled dairy and non-dairy. Rabbi Friedman attests that he approves: the kosher menu served at LCF; the kosher recipes and utensils used at LCF; and the area for preparation of kosher food at LCF. Rabbi Friedman attests that it is not necessary for a rabbi to be present during the preparation of kosher meals in order for the meals to be kosher. He further attests that the kosher menu served at LCF is used throughout the State of Kansas, is generated and prepared with the approval of a qualified dietician, and is approved by the KDOC.

**IV.    Discussion**

Plaintiffs allege Aramark violated theur First Amendment rights by failing to provide an adequate kosher diet. Plaintiffs raise four specific allegations that Aramark violated their First Amendment rights by not providing them with a kosher diet: (1) that food served to kosher food dieters is prepared in the same kitchen as non-kosher food, thus making it non-kosher; (2) that food served to kosher dieters is not kosher because a rabbi must be present in the kitchen at all

7

times during the preparation of kosher meals; (3) that the kosher menu used at LCF is not used state-wide as is the menu for regular meals; and (4) that the cooking utensils used in the preparation of kosher meals are "used for every kind of cooking, even though these pots and pans are for 'Kosher Only.'"

Under Tenth Circuit law, a prisoner has a First Amendment right to a diet confirming to his sincerely-held religious beliefs.[26] To establish a free exercise violation, a prisoner must show that a defendant substantially burdened the practice of his religion without any justification reasonably related to legitimate penological interests.[27] "There is, of course a de minimus level of imposition with which the Constitution is not concerned."[28]

Each of plaintiffs' factual allegations are directly refuted by their own admissions and by the authority on the subject, Rabbi Friedman, who is contracted by the State of Kansas to advise, supervise and monitor the preparation and service of religious meals to those of Jewish faith. Rabbi Friedman attests that there is a separate area for kosher food preparation at LCF; plaintiffs' allegation that food must be prepared in a separate kitchen in order to be deemed kosher is not supported by the record. Rabbi Friedman also discredits plaintiffs' claims that a rabbi must be present during preparation of kosher meals and that the kosher menu at LCF is not used state-wide. And, Rabbi Friedman directly contradicts plaintiffs' claim that kosher utensils are used to prepare other foods, attesting that the kosher utensils are stored separately, cleaned separately, and designated as dairy and non-dairy. Plaintiffs have not produced evidence, other

---

[26]*Smith v. Bruce*, 568 F. Supp. 2d 1277, 1282 (D. Kan. 2008) (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)).

[27]*Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[28]*Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

8

than their own personal opinions, that they were denied a properly prepared kosher diet or were unable to observe the tenets of their religion. There is no evidence before the Court that reasonably suggests that plaintiffs' sincere religious beliefs were unduly burdened by the meals provided. The uncontroverted facts clearly show that no reasonable jury could conclude that plaintiffs' First Amendment rights were violated and Aramark's motion for summary judgment is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Aramark's Motion for Summary Judgment (Doc. 143) against plaintiffs Green and Delimont is GRANTED.

**IT IS SO ORDERED.**

Dated: August 6, 2010

 S/ Julie A. Robinson
 JULIE A. ROBINSON
 UNITED STATES DISTRICT JUDGE